UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/29/2018
```

Cabrera et al.,

                                    Plaintiffs,

              -against-

New York Fresh Meat Inc. et al.,

                                    Defendants.

1:15-cv-01325 (GBD) (SDA)

<u>REPORT AND RECOMMENDATION</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE GEORGE B. DANIELS, UNITED STATES DISTRICT JUDGE:**

By Order dated April 7, 2017, the Court granted Plaintiffs' motion for a default judgment in this wage-and-hour suit (ECF No. 68), and this case was referred to Magistrate Judge Ellis for an inquest on damages. Upon the retirement of Judge Ellis, this case was reassigned to me on December 8, 2017. For the reasons set forth below, I recommend that the Court enter judgment against Defendants as set forth in the Conclusion below.

<u>BACKGROUND</u>

I.    <u>Established Facts As A Result Of Defendants' Default[1]</u>

      A.    <u>Defendants</u>

Defendants own, operate, and/or control a meat supply company located at 355 Food Center Drive, Bronx, New York 10474 operating under the name "New York Fresh Meat." (*See* First Amended Complaint, dated May 3, 2015 ("Am. Compl."), ECF No. 19, ¶ 2; Proposed Findings of Fact ("Fact Findings"), ECF No. 81, ¶ 8.) Defendant Min J. Lee ("Lee") served as owner,

---

[1] In light of Defendants' default, the Court is required to accept all of Plaintiffs' allegations as true, except for those pertaining to damages. *See, e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

manager, principal or agent of Defendant New York Fresh Meat Inc. ("Defendant Corporation"), and, through this corporate entity, operated the meat supply company known as "New York Fresh Meat" as a joint or unified enterprise. (Am. Compl. ¶ 3; Fact Findings, ¶¶ 8-9.)

At all relevant times, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their services. In each year from 2011 to the present, the Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated). In addition, the Defendants and/or their enterprise were directly engaged in interstate commerce. (Am. Compl. ¶¶ 36-38.)

B.   **Plaintiffs**

1.   **Adael Cabrera**[2]

The Defendants employed Plaintiff Adael Cabrera ("Adael")[3] as a meat packer and delivery driver from approximately September 2013 until March 2015. During that time period, Adael worked from 10:30 p.m. to approximately 12:00 p.m. on Mondays, Tuesdays, Thursdays and Fridays; and from 10:30 p.m. to 10:30 a.m. on Wednesdays (typically 66 hours per week). Throughout his employment with Defendants, Adael was paid his wages in cash.

From approximately September 2013 until March 2015, Defendants paid Adael a fixed

---

[2] The facts concerning Adael Cabrera are contained in Fact Findings ¶¶ 12-21 and the Declaration of Adael Cabrera, dated Jan. 19, 2018, ECF No. 81-2, ¶¶ 5-19.

[3] Because four of the Plaintiffs share a last name with another Plaintiff, the Court refers to those Plaintiffs by their first names in order to avoid confusion. No disrespect is intended.

salary of $500 per week. Adael's pay did not vary even when he was required to stay later or work a longer day than his usual schedule. Defendants did not provide Adael with an accurate statement of wages with each payment of wages. Adael was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked. Defendants have not provided any notice to Plaintiff Cabrera in English or in Spanish (Adael's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1). No notification, either in the form of posted notices or through other means, was ever been given to Adael regarding overtime and wages under the FLSA and the NYLL.

### 2.   Gustavo Gomez[4]

The Defendants employed Plaintiff Gustavo Gomez ("Gustavo") as a meat packer and delivery driver from approximately March 1, 2012 until March 2015. His work duties required neither discretion nor independent judgment. Gustavo worked from approximately 10:30 p.m. until on or about 12:00 p.m. on Mondays, Tuesdays, Thursdays and Fridays; and from approximately 10:30 p.m. until on or about 10:30 a.m. on Wednesdays (typically 66 hours per week). Throughout his employment with Defendants, Plaintiff Gustavo was paid his wages in cash. Defendants paid Gustavo a fixed salary of $325 per week. His pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

Defendants have not provided Gustavo an accurate statement of wages with each payment of wages, as required by NYLL 195(3). He was not required to keep track of his time, nor

---

[4] The facts concerning Gustavo Gomez are contained in Fact Findings ¶¶ 26-38 and the Declaration of Gustavo Gomez, dated Jan. 9, 2018, ECF No. 81-4, ¶¶ 5-20.

to his knowledge, did Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked. Defendants did not provide any notice to Gustavo in English or in Spanish (Gustavo's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1). No notification, either in the form of posted notices or by other means, has ever been given to Gustavo regarding overtime and wages under the FLSA and NYLL.

While working for Defendants, Gustavo was not provided paystubs or any other document that reflected the hours he worked (either daily, weekly or by any other measure); his hourly rate of pay, overtime or any other record or report regarding his pay, hours worked; or any deductions or credits taken against his wages. Throughout his employment, Gustavo never was provided with written information regarding minimum wage and overtime requirements under New York State or Federal Laws.

### 3.   Luis Gomez[5]

The Defendants employed Plaintiff Luis Gomez ("Luis") as a meat packer and delivery driver from approximately July 2011 until March 2015. His work duties required neither discretion nor independent judgment. Throughout his employment with Defendants, Luis regularly worked in excess of 40 hours per week. From approximately July 2011 until March 2015, Luis worked from approximately 10:30 p.m. until on or about 11:00 a.m. on Mondays, Tuesdays and Thursdays; from approximately 10:30 p.m. until on or about 3:00 p.m. Fridays; and from approximately 10:30 p.m. to until on or about 10:00 a.m. on Wednesdays (typically 65.5 hours

---

[5] The facts concerning Luis Gomez are contained in Fact Findings ¶¶ 39-54 and the Declaration of Luis Gomez, dated Jan. 11, 2018, ECF No. 81-3, ¶¶ 5-21.

per week). Throughout his employment with Defendants, he was paid his wages in cash. Defendants paid Luis a fixed salary of $325 per week. His pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

Defendants did not provide Luis an accurate statement of wages with each payment of wages, as required by NYLL 195(3). Luis was not been required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked. Defendants never provided any notice to him in English or in Spanish (Luis's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1). Defendants made unauthorized deductions from Luis's wages for missing merchandise, including deducting his wages after Luis was robbed during two deliveries. Defendants deducted approximately $50.00 per week out of Luis's wages for a total of approximately $6,000.00 following the robberies and other incidents of missing merchandise throughout Luis's employment.

No notification, either in the form of posted notices or other means, was ever been given to Luis regarding overtime and wages under the FLSA and NYLL. Throughout his employment, he never was provided with written information regarding minimum wage and overtime requirements under New York State or Federal Laws.

### 4.   Miguel Palacios[6]

The Defendants employed Plaintiff Miguel Palacios ("Palacios") as a meat packer and delivery driver from approximately February 2013 until on or about February 2015. His work

---

[6] The facts concerning Miguel Palacios are contained in Fact Findings pp. 8-10 and the Declaration of Miguel Palacios, dated Jan. 9, 2018, ECF No. 81-5, ¶¶ 5-30.

duties required neither discretion nor independent judgment. Throughout his employment with Defendants, Palacios regularly worked in excess of 40 hours per week. Palacios worked from approximately 10:30 p.m. until on or about 11:00 a.m. on Mondays, Tuesdays and Thursdays; from approximately 10:30 p.m. until on or about 3:00 p.m. on Fridays; and from approximately 10:30 p.m. until on or about 10:00 a.m. on Wednesdays (typically 65.5 hours per week). From approximately February 2013 until on or about May 2014, Defendants paid Palacios his wages in cash. From approximately May 2014 until on or about February 10, 2015, Defendants paid Palacios his wages by check. Defendants paid Palacios a fixed salary of $325 per week. His pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

Defendants did not provide Palacios an accurate statement of wages with each payment of wages. Palacios was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked. Defendants never provided any written notice to Palacios in English or in Spanish (his primary language), of his rate of pay, employer's regular pay day and such other information as required by New York State Labor Laws.

Defendants made unauthorized deductions from Palacios's wages for missing merchandise, including deducting his wages after he was robbed during two deliveries. Defendants deducted approximately $50.00 per week out of Palacios's wages for a total of approximately $4,000.00 following the robberies and other incidents of missing merchandise throughout his employment.

No notification, either in the form of posted notices or by other means, ever was given to Palacios regarding overtime and wages under the FLSA and the NYLL. While working for

Defendants, Palacios's was not provided paystubs or any other document that reflected the hours he worked (either daily, weekly, or by any other measure), his hourly rate of pay or overtime; or any other record or report regarding his pay, hours worked or any deductions or credits taken against his wages.

### 5.   Eric Cabrera[7]

Defendants employed Plaintiff Eric Cabrera ("Eric") as a meat packer and a delivery driver from approximately June 2013 until on or about September 27, 2014. His work did not require discretion or independent judgment. Throughout his employment with Defendants, he regularly worked in excess of 40 hours per week. Eric worked from approximately 10:30 p.m. until on or about 12:00 p.m. on Mondays, Tuesdays, Thursdays and Fridays; and from approximately 10:30 p.m. until on or about 10:30 a.m. on Wednesdays (typically 66 hours per week). Throughout his employment, Defendants paid him his wages in cash. From approximately June 2013 until on or about July 2013, Defendants paid Eric a fixed salary of $600 per week. From approximately August 2013 until on or about September 27, 2014, Defendants paid him a fixed salary of $700 per week. His pay did not vary when he worked additional hours longer than his usual schedule.

Eric never received an accurate statement of wages with each payment of wages Throughout his employment with Defendants, he was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as time clock or punch cards, that accurately reflected his actual hours worked. Defendants did not provide Eric with any written notice, in English or in Spanish (his primary language), of the rate of pay, his former

---

[7] The facts concerning Eric Cabrera are contained in Fact Findings pp. 10-12 and the Declaration of Eric Cabrera, dated Jan. 17, 2018, ECF No. 81-6, ¶¶ 5-22.

employer's regular pay day and such information as required by New York State Laws. No notification, either in the form of posted notices or by other means, ever was given to him regarding overtime or wages under the FLSA and the NYLL. Throughout his employment with Defendants, he never was provided with written information regarding minimum wage and overtime requirements under New York State or Federal Laws.

C.      **Procedural History**

Plaintiffs Adael, Gustavo, Luis and Palacios filed the Complaint against Defendants on February 24, 2015. (*See* ECF No. 1.) Defendants filed their Answer to the Complaint on April 16, 2015. (*See* ECF No. 10.) Plaintiffs Adael, Gustavo, Luis and Palacios filed the First Amended Complaint against Defendants on May 13, 2015. (*See* ECF No. 19.) Defendants filed their Answer to the Amended Complaint on June 1, 2015. (*See* ECF No. 22.) By Order dated June 2, 2015, Defendants' first counsel was granted leave to withdraw as counsel for Defendants. (*See* ECF No. 24.) On June 19, 2015, Defendants' second counsel filed a notice of appearance. (*See* ECF No. 26.) On September 11, 2005, Plaintiff Eric filed a consent to join this case as a party plaintiff. (*See* ECF No. 36.)

This case was scheduled for trial to begin on February 13, 2017. On February 6, 2017, Defendants' second counsel filed a motion for leave to withdraw as counsel due to Defendants' alleged failure to pay and to communicate with counsel. (*See* ECF Nos. 59, 60.) On February 13, 2017, Plaintiffs filed a motion for default judgment. (*See* ECF No. 64.) Pursuant to District Judge Daniels's order at the February 7, 2017 conference, Defendants' second counsel advised Defendants that they should contact Judge Daniels if they intend to further defend this case.

(Michael K. Chong Feb. 24, 2017 Letter, ECF No. 67.) Defendants' second counsel also sent Defendants a copy of Plaintiffs' motion for default judgment. (*Id.*)

Defendants did not contact Judge Daniels and they failed to oppose either motion. Thus, by Order entered on April 7, 2017, Judge Daniels granted Defendants' second counsel's motion for leave to withdraw as counsel; granted Plaintiffs' motion for default judgment; and referred this case to Magistrate Judge Ellis for an inquest on damages. (*See* ECF No. 68.) This case was reassigned to this Court on December 4, 2017. Plaintiffs' filed Proposed Findings of Fact and Conclusions of Law on January 29, 2018. (*See* ECF No. 81.) Defendants' response was due no later than February 5, 2018 (*see* ECF No. 78), but no response was filed.

## DISCUSSION

### I.     Burden Of Proof

Since a default judgment has been entered in Plaintiffs' favor, the only remaining issue is the amount of damages to which they are entitled. Plaintiffs bear the burden of establishing their entitlement to recovery and thus must substantiate their claims with evidence to prove the extent of their damages. *See, e.g.*, *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Although the Court may hold a hearing to assess damages, a hearing is not required when a sufficient basis on which to make a calculation exists. *See* Fed. R. Civ. P. 55(b)(2); *see also Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). Indeed, the Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)

(quoting *Fustok*, 873 F.2d at 40). Here, I rely on Plaintiff's sworn declarations, which contain the required evidentiary basis, to determine whether the requested damages are reasonable.

An employee seeking to recover unpaid wages has the burden of proving that he performed work for which he was not properly compensated. *See Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777 (JGK) (JLC), 2012 WL 3578781, at *3 (S.D.N.Y. Aug. 2, 2012) (internal citation and quotations omitted). An employer is required to maintain "records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ." 29 U.S.C. § 211(c); *see also* 12 N.Y. Compilation Codes R. & Regs. ("NYCRR") § 142-2.6. However, absent such documentation, an employee may establish his right by relying on his recollection alone. An affidavit that sets forth the number of hours worked is sufficient. *Angamarca*, 2012 WL 3578781, at *3 (internal citation and quotations omitted).

Once an employee has presented his evidence, an employer may then "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Angamarca*, 2012 WL 3578781, at *4 (internal citations and quotations omitted). "If the employer fails to do so, the court may enter judgment in the employee's favor, using her recollection to determine damages, even though the result be only approximate." *Id.* Because Defendants have defaulted, Plaintiffs' representations as to the dates they worked will be credited and their damages calculated on that basis.

II.   **Statutes Of Limitations**

A.   **Statutory Periods For Recovery Under The NYLL And The FLSA**

Plaintiffs assert claims under both the NYLL and the FLSA. The statute of limitations is six years under the NYLL and two years under the FLSA. *See* NYLL § 663(3); 29 U.S.C. § 255(a). However, if an employer's acts are found to be "willful," the statute of limitations under the FLSA increases to three years. 29 U.S.C. § 255(a). Plaintiffs assert that the acts of Defendants were willful (Plaintiffs' Proposed Conclusions of Law ("Legal Conclusions") ¶¶ 19-20), a fact the Court accepts as true given Defendants' default. *See, e.g.*, *Angamarca*, 2012 WL 3578781, at \*4 (internal citations omitted). Therefore, the limitations period for the FLSA claims is three years.

B.   **Impact Of Longer Statutory Period Under The NYLL**

Plaintiffs may not recover under both the NYLL and the FLSA for the same injury. Therefore, Plaintiffs will recover under the statute that provides them the greatest relief. *See Angamarca*, 2012 WL 3578781, at \*4 (internal citations omitted). Since the Complaint was filed on February 24, 2015, February 24, 2012 is the earliest date for which Plaintiffs may recover under the FLSA. However, the earliest date for which Plaintiffs may recover under the NYLL is February 24, 2009.

III.   **Unpaid Regular Wages, Overtime Wages And Spread-Of-Hours Compensation**

A.   **Legal Standards For Entitlement**

State and federal law require employers to pay to employees at least a minimum hourly rate for every hour they work. *See* 29 U.S.C. § 206(a); 12 NYCRR § 146-1.2. At all times relevant to the FLSA claims in this action, the minimum wage rate under the FLSA was $7.25 per hour. Employees must be paid one-and-one half times their regular rate for each hour worked over forty (40) hours in a week. 29 U.S.C. § 207(a)(1). From 2011 to 2013, the minimum wage under

New York law was the same as under the FLSA. The New York Minimum wage range increased to $8.00 per hour as of December 31, 2013; and it further increased to $8.75 per hour as of December 31, 2014. N.Y. Labor Law § 652(1). New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week. 12 N.Y.C.R.R. § 142-2.2.

Under New York law, employees are also entitled to receive "spread of hours" compensation, equaling an extra hour's pay at the regular minimum wage for each day they work more than ten hours. *See* 12 NYCRR § 146-1.6; *see also Angamarca*, 2012 WL 3578781, at *6 (internal citations omitted). Because Defendants failed to pay Plaintiffs any spread-of-hours compensation, Plaintiffs are entitled to reimbursement for the days they worked in excess of ten hours.

**B.  Plaintiffs' Regular Wages, Overtime Wages And Spread-Of-Hours Pay**

Plaintiffs were not paid overtime at the rate of one-and-a-half times their regular rate. Rather, Plaintiffs received a fixed rate throughout their entire employment with Defendants that did not vary depending on whether they had worked in excess of forty hours in a week. (Legal Conclusions ¶ 11.)

Where employees receive a straight weekly salary, there is a rebuttable presumption under the FLSA that their salary covers 40 hours worked. Therefore, to determine the regular rate, their weekly salary is divided by 40 hours. *See Rosendo v. Everbrighten Inc.*, No. 13-CV-7256 (JGK) (FM), 2015 WL 1600057, at *3 (S.D.N.Y. April 7, 2015), *adopting Report and Recommendation*, 2015 WL 4557147 (S.D.N.Y. July 28, 2015; *Moon v. Kwon*, 248 F. Supp. 2d 201, 207-08 (S.D.N.Y. 2002); *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999). Then,

to determine their unpaid overtime, their regular hourly rate is multiplied by 1.5 to determine the overtime rate they should have received.

Plaintiffs included as Exhibit G to their Proposed Findings of Fact and Conclusions of Law a spreadsheet reflecting the damages owed to Plaintiffs. (*See* ECF No. 81-7.)[8] The Court finds the calculations set forth in Exhibit G with respect to overtime wages to be accurate, such that the following amounts are due to Plaintiffs for unpaid overtime wages:[9]

| Plaintiff Name | Unpaid Wages & Overtime Due |
| --- | --- |
| Adael Cabrera | $36,911 |
| Gustavo Gomez | $49,894 |
| Luis Gomez | $59,105 |
| Miguel Palacios | $32,379 |
| Eric Cabrera | $44,657 |

Plaintiffs also are entitled to spread-of-hours compensation — equaling an additional hour of minimum wage pay for every day worked longer than ten hours — because they worked more than 10-hour days throughout their employment. The damages owed for a spread-of-hours claim are calculated by multiplying the number of days the employee worked more than 10 hours by the applicable minimum wage rate. *See* 12 NYCRR § 146-1.6. The Court finds that the calculations in Exhibit G with respect to spread-of-hours compensation are also accurate, such that the following amounts are due to Plaintiffs for unpaid spread-of-hours compensation:

---

[8] At the Court's request, Plaintiffs' counsel also provided the Court with a native Excel version of the spreadsheet.

[9] Throughout this Report and Recommendation, the Court has rounded numbers to the nearest dollar.

| Plaintiff Name | Spread-Of-Hours Compensation Due |
|---|---|
| Adael Cabrera | $3,003 |
| Gustavo Gomez | $5,919 |
| Luis Gomez | $7,104 |
| Miguel Palacios | $3,982 |
| Eric Cabrera | $2,813 |

## IV.   Liquidated Damages

Although Plaintiffs note that they would be entitled to liquidated damages under both the FLSA and the NYLL, they only seek liquidated damages under the NYLL. (Legal Conclusions ¶¶ 24-26.)[10] The NYLL entitles Plaintiffs to liquidated damages since Defendants' wage violations were "willful." NYLL §§ 198(1-a), 663(1). NYLL § 663(1) provides that Plaintiffs are entitled to "liquidated damages equal to one hundred percent of the total of such underpayments found to be due."[11] Plaintiffs are entitled to liquidated damages on the total amounts of unpaid overtime wages and spread-of-hours compensation under the NYLL in amounts equaling 100% of the total amounts due. Thus, the Court finds that Plaintiffs are entitled to liquidated damages under the NYLL in the amounts set forth in the two charts above, effectively doubling the amounts, as reflected in Exhibit G. (*See* ECF No. 81-7.)

---

[10] In *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59 (2d Cir. 2016), a non-precedential panel opinion of the Second Circuit refused to permit an award of liquidated damages under both the FLSA and the NYLL for the same violation, because it would amount to "double recovery." *Id*. at 60-61. Plaintiffs are not seeking such a double recovery in this case.

[11] The statute was amended, effective April 9, 2011, to raise the amount of liquidated damages from 25% to 100% of unpaid wages. *See* 2010 N.Y. Sess. Laws, ch. 564 (S.8380) (McKinney).

## V.    **Wage Theft Protection Act Damages**

Plaintiffs seek to recover damages for Defendants' failure to provide regular wage statements and annual wage notices as required by New York's Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL effective April 9, 2011. (Legal Conclusions ¶ 23.) The WTPA requires employers to

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.... [T]he statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

N.Y. Labor Law § 195(3). Prior to February 27, 2015, the WTPA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per workweek, not to exceed $2,500. *See* 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Labor Law § 198(1-d). As of February 27, 2015, the WTPA increased these penalties to $250 per workday, not to exceed $5,000. N.Y. Labor Law § 198(1-d).

As set forth above, Plaintiffs never were given any payment statements throughout their employment. Because the employment of Palacios and Eric concluded prior to the February 27, 2015 amendment, and they each worked more than 25 weeks, they each are entitled to damages in the maximum statutory amount of $2,500.[12] Adael, Gustavo and Luis were employed until March 2015 and are therefore entitled to an additional $250 for the February 27, 2015 workday,

---

[12] Plaintiffs had sought damages of $5,000 for each Plaintiff due to the violation of N.Y. Labor Law § 195(3) (Legal Conclusions ¶ 23), but – as set forth above – that amount was based upon the statutory maximum in effect on and after February 27, 2015, rather than the lesser amount in effect prior to that date.

though none of them worked on Saturdays and therefore are not entitled to payment for the February 28, 2015 workday. (Fact Findings ¶¶ 14, 30, 45.) The Court therefore awards each of Adael, Gustavo and Luis an additional $250 for February 27, 2015, in addition to the maximum statutory amount of $2,500 (since they worked more than 25 weeks).

Plaintiffs also seek to recover damages for Defendants' failure to comply with Section 195(1) of the NYLL, insofar as they were not provided with wage notices. The WTPA requires that at the time of hiring, employers furnish each employee

> in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

N.Y. Labor Law § 195(1)(a). Prior to December 29, 2014, employers were required to provide wage notices "on or before February first of each subsequent year of the employee's employment with the employer." *Andrade v. 168 First Ave Rest. Ltd.*, 2016 WL 3141567, at *8-9 (quoting N.Y. Labor Law § 195(1)(a) (eff. April 9, 2011 to Dec. 28, 2014)); *see*, *e.g.*, *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 475 n.34 (S.D.N.Y. 2015). Prior to February 27, 2015, the WTPA entitled employees to recover statutory damages for annual wage notice violations of $50 per workweek, not to exceed $2,500. *See* 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Labor Law § 198(1-b). As of February 27, 2015, these penalties increased to $50 per workday, not to exceed $5,000. N.Y. Labor Law § 198(1-b). Because the employment of Palacios and Eric concluded prior

16

to the February 27, 2015 amendment, and they each worked more than 50 weeks, they each are entitled to damages in the maximum statutory amount of $2,500.[13] Adael, Gustavo and Luis were employed on Friday, February 27, 2015. The Court therefore awards each of Adael, Gustavo and Luis an additional $50 for February 27, 2015, in addition to the maximum statutory amount of $2,500 (since they worked more than 50 weeks).

**VI.**    **Pre–Judgment Interest**

Plaintiffs seek pre-judgment interest on their state claims for unpaid wages and overtime, as well as spread-of-hours pay. Plaintiffs are entitled under New York law to pre-judgment interest at the statutory rate of 9% per year. *See* N.Y. C.P.L.R. §§ 5001, 5004. Pre-judgment interest applies only to the amount of compensatory damages and excludes the amount of liquidated damages. *See Angamarca*, 2012 WL 3578781, at *9 (internal citation omitted). Where unpaid wages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). I recommend that pre-judgment interest be calculated by multiplying the principal amount due under the NYLL by the interest rate by the time period — from a singular, midpoint date — up until and including the date judgment is entered. *See Angamarca*, 2012 WL 3578781, at *9 (internal citation omitted).

Since each of the Plaintiffs worked for different periods of time and are due differing amounts of money, prejudgment interest needs to be calculated separately by Plaintiff. The chart

---

[13] As with the violation of N.Y. Labor Law § 195(3), Plaintiffs had sought damages of $5,000 for each Plaintiff due to the violation of N.Y. Labor Law § 195(1) (Legal Conclusions ¶ 23), but, again – as set forth above – that amount was based upon the statutory maximum in effect on and after February 27, 2015, rather than the lesser amount in effect prior to that date.

below reflects the amounts per Plaintiff on which 9% prejudgment interest is due (*i.e.*, the sum of the unpaid regular and overtime wages plus the spread-of-hours compensation), as well as a recommended mid-point date from which the interest should be calculated, up through the date the judgment is entered:

| Plaintiff Name | Relevant Period | Midpoint Date | Amount Due |
|---|---|---|---|
| Adael Cabrera | 9/15/2013-3/1/2015 | 6/8/2014 | $39,914 |
| Gustavo Gomez | 3/1/2012-3/1/2015 | 8/30/2013 | $55,813 |
| Luis Gomez | 7/15/2011-3/1/2015 | 5/7/2013 | $66,209 |
| Miguel Palacios | 2/15/2013-2/10/2015 | 2/12/2014 | $36,361 |
| Eric Cabrera | 6/16/2013-9/27/2014 | 2/14/2014 | $47,470 |

## VII.   Attorneys' Fees and Costs

Plaintiffs seek $13,384.10 in attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198(1-a), 663(1). (Faillace Decl. ¶¶ 66-69.) It is the Court's duty to determine if the attorneys' fees sought are reasonable. *See Angamarca*, 2012 WL 3578781, at *10.

### A.   Reasonable Hourly Rate

District courts have broad discretion to determine a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A reasonable hourly rate is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289-90 (2d Cir. 2011) (internal quotation marks and citations omitted). The reasonable rate is ordinarily determined by "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill

18

to the fee applicant's counsel," which may include taking "judicial notice of the rates awarded in prior cases." *Farbotko v. Clinton Cnty*., 433 F.3d 204, 209 (2d Cir. 2005).

Plaintiffs are represented by the firm Michael Faillace & Associates, P.C. ("Faillace Firm"). Plaintiffs seek to recover fees for work performed by Michael Faillace and an attorney with the initials "JA." (*See* ECF No. 81-8.)[14] Mr. Faillace is the managing member of the firm and has been practicing since 1983, and has taught employment discrimination at the Fordham University and Seton Hall University law schools. (Legal Conclusions ¶ 32.) Plaintiffs seek reimbursement for his work at a rate of $450.00 per hour. (*See id*.)

Although Plaintiffs fail to provide biographical information for Mr. Androphy (a/k/a JA), the Court takes judicial notice that Mr. Androphy is a Senior Litigation Associate at the Faillace Firm who is a 2005 graduate of Columbia University Law School.[15] Plaintiffs seek reimbursement for Mr. Androphy's work at a rate of $400 per hour. (*See* ECF No. 81-8.) In a prior decision by Magistrate Judge Cott regarding the Faillace Firm, the Court found that an hourly rate of $450 for Mr. Faillace was reasonable. *See Angamarca*, 2012 WL 3578781, at *11. This Court also has found Mr. Faillace's $450 hourly rate to be reasonable. *See Godinez v. Best Wingers LLC*, No. 16-CV-06434 (JGK) (SDA), 2018 WL 1320340, at *5-6 (S.D.N.Y. Feb. 21, 2018). Thus, the Court finds that Mr. Faillace's hourly rate is reasonable. The Court, however, finds that Mr. Androphy's $400 hourly rate is not reasonable. Following the lead of Magistrate Judge Francis in *Ortega v. JR Primos 2 Restaurant Corp*., 15-CV-9183 (JCF), 2017 WL 2634172, at *7 (S.D.N.Y. Jun. 16, 2017), I

---

[14] Although the attorney's name is not specified in the documents submitted by Plainitiffs in connection with their motion for a default judgment, one of the counsel of record in this case for Plaintiffs from the Faillace Firm has the initials "JA," namely, Joshua Androphy.

[15] *See* http://www.faillacelaw.com/our-attorneys/joshua-androphy/ .

recommend that Mr. Androphy's hourly rate be reduced to $350.

**B.**   **Reasonable Hours Expended**

Having determined the appropriate hourly billing rates for Mr. Faillace and Mr. Androphy, the Court next calculates the hours reasonably expended. *See Angamarca*, 2012 WL 3578781, at *12. The Court has examined the contemporaneous time records that identify, for Mr. Faillace and Mr. Androphy, the hours expended on a task, "with a view to the value of the work product of the specific expenditures to the client's case." *See Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) (citation omitted).

Based upon the Court's review, it is recommended that an award be given for 20 of the hours billed by Mr. Faillace, and 6 hours billed by Mr. Androphy, thus crediting the Faillace Firm for 26 of the 30.95 hours billed. The Court recommends these reductions to eliminate some time billed on discussions between attorneys at the Faillace Firm (including with attorneys other than Messrs. Faillace and Androphy), and to eliminate time billed for the "intake" meeting with "clients" for which only $1.60 is sought by the Faillace Firm. (*See* ECF No. 81-8.) Thus, the Court recommends awarding legal fees to Plaintiffs in the amount of $11,100 (20 hours x $450 per hour for Mr. Faillace plus 6 hours x $350 per hour for Mr. Androphy).

**C.**   **Costs**

Lastly, Plaintiff seeks recovery of the $350 court filing fee and $150 in fees for executing service of process to the Defendants. (*See* ECF No. 81-8 at 4.) Pursuant to NYLL § 663(1), an employee who prevails in a wage-and-hour action is entitled to recover costs. NYLL § 663(1). The Court has reviewed Plaintiffs' costs and determined that they are reasonable. Therefore, the Court should award Plaintiffs $500 in costs.

**VIII.**    <u>**Joint and Several Liability**</u>

Plaintiffs allege that Defendant Lee was an officer and/or agent of the Defendant Corporation; that he possessed operational control over the Defendant Corporation; and that he determined the wages and compensation of the Defendants' employees, including Plaintiffs, established the schedules of the employees, maintained employee records and had the authority to hire and fire employees. (Am. Compl. ¶¶ 26-27.) Under both the FLSA and the NYLL, Defendant Lee is considered an employer and thus is individually liable along with the Defendant Corporation. *See* 29 U.S.C. § 203(d); N.Y.L.L. §§ 2(5)-(6). Because Defendants defaulted, they cannot now challenge liability, and thus are held jointly and severally liable. *See Li v. Kai Xiang Dong*, No. 15-CV-7554 (GBD) (AJP), 2017 WL 892611, at *22 (S.D.N.Y. March 7, 2017) (citations omitted).

**CONCLUSION**

For the foregoing reasons, I recommend that the Court enter judgment[16] in each of Plaintiffs' favor against Defendants as set forth in the chart below:[17]

| Plaintiff Name | Wages & Overtime | Spread-Of-Hours | Liquidated Damages | WTPA | Totals |
|---|---|---|---|---|---|
| Adael Cabrera | $36,911 | $3,003 | $39,914 | $5,300 | $ 85,128 |
| Gustavo Gomez | $49,894 | $5,919 | $55,813 | $5,300 | $116,926 |
| Luis Gomez | $59,105 | $7,104 | $66,209 | $5,300 | $137,718 |
| Miguel Palacios | $32,379 | $3,982 | $36,361 | $5,000 | $ 77,722 |
| Eric Cabrera | $44,657 | $2,813 | $47,470 | $5,000 | $ 99,940 |

I further recommend as follows: (1) Pre-judgment interest should be awarded as set forth in section VI above; and (2) Plaintiffs should be awarded $11,458 in attorneys' fees and costs.

---

[16] The amounts set forth in the chart below are amounts due to Plaintiffs under the NYLL. NYLL § 198(4) provides that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." Therefore, if Defendants fail to pay a judgment entered by the Court, or appeal it within 90 days, that judgment should automatically increase by 15%.

[17] The Court does not recommend adopting Plaintiffs' Exhibit G in its entirety, since there are some errors and adjustments that must be made. For example, the calculation of total damages for each employee erroneously includes the number of "SOH Days per Week" as part of the monetary damages. (*See* ECF No. 81-7.) Moreover, Exhibit G provides for "Wage Notice" and "Wage Statement" damages in excess of the amounts permitted by the WTPA, as explained in Section V above.

DATED:       New York, New York
             March 29, 2018


_____

**STEWART D. AARON**
**United States Magistrate Judge**


\*               \*               \*

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen (14) days (including weekends and holidays) from service

of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)

and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding

three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party

may respond to another party's objections within fourteen days after being served with a copy.

Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the

Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an

extension of time for filing objections must be addressed to Judge Daniels.

**THE FAILURE TO FILE THESE TIMELY OBJECTIONS WILL RESULT IN A WAIVER OF THOSE**

**OBJECTIONS FOR PURPOSES OF APPEAL.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b);

*Thomas v. Arn,* 474 U.S. 140 (1985).

Chambers shall mail copies of this Report and Recommendation to Defendants at the

addresses set forth in Plaintiffs' Affidavit of Service (ECF No. 82).